IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**SCHINDLER ELEVATOR CORPORATION**     **PLAINTIFF/
COUNTER-DEFENDANT**

v.     **CAUSE NO. 1:09cv768-LG-RHW**

**RIVERBOAT CORPORATION OF**     **DEFENDANT/
MISSISSIPPI**     **COUNTER-CLAIMANT**

### ORDER TAKING UNDER ADVISEMENT MOTION
### TO ENFORCE SETTLEMENT AGREEMENT AND
### GRANTING MOTION FOR ORAL ARGUMENT

**BEFORE THE COURT** are the Motion to Enforce Settlement Agreement [112] filed by Riverboat Corporation of Mississippi and the Motion for Oral Argument [116] filed by Schindler Elevator Corporation. Schindler agreed to provide elevator software to Riverboat in a Settlement Agreement entered among the parties. Riverboat argues that the elevator software does not function as required by the Agreement. Schindler disputes this assertion. Upon reviewing the submissions of the parties and the applicable law, the Court finds that the Motion to Enforce should be taken under advisement and set for evidentiary hearing. The Motion for Oral Argument is denied as moot.

### BACKGROUND

Riverboat owns the Isle of Capri Resort in Biloxi, Mississippi. On June 1, 1995, it entered into a Preventive Maintenance Agreement (PMA) with Schindler in which Schindler agreed to perform preventive maintenance operations and tests on the elevators and escalators at the Isle. Riverboat terminated the PMA effective June 10, 2009, due to Schindler's substandard service.

On November 16, 2009, Schindler filed the present lawsuit. It sought liquidated damages due to the alleged premature cancellation of the PMA. Schindler also claimed that Riverboat owed $9,118.13 for work performed prior to cancellation. Schindler further sought return of two SIM cards that were missing from elevators at the Isle of Capri at the time that Riverboat terminated the PMA between the parties. The eight other SIM cards were removed from the Isle of Capri by Schindler. These cards are diagnostic tools utilized by Schindler to repair elevators that it manufactures, and Schindler claims that they are its intellectual property. Schindler contends that the elevators can be maintained without SIM cards, but the cards make it easier to diagnose problems.

Riverboat filed a counterclaim against Schindler alleging breach of contract, breach of express and implied warranties, and breach of the duty of good faith and fair dealing due to inadequate maintenance and housekeeping.

This Court determined that Riverboat was entitled to summary judgment as to Schindler's claim for liquidated damages as a result of the termination of the PMA and partial summary judgment with regard to its counterclaim for breach of contract arising out of inadequate maintenance and housekeeping. The parties settled the remainder of the dispute and agreed that the Court should enter an Agreed Order of Dismissal that retained jurisdiction over this matter for six months to enforce the terms of the settlement.

## DISCUSSION

As part of the settlement, Riverboat agreed to return the remaining two SIM

cards to Schindler, and Schindler agreed to:

> install new software on all SIM-cards [sic] related elevators at the Isle of Capri Resort in Biloxi, Mississippi on or before September 30, 2011, which software will provide diagnostic, and trouble shooting capability, and greater maintenance access to the equipment, to facilitate the proper operation and functioning of the elevators as contemplated by the parties' [PMA].

(Def.'s Mot., Ex. A, ECF No. 112-1). Schindler warranted the software for a period of six months. (*Id.*) The parties agreed that any disputes arising within that six month period that could not be resolved by the parties would be submitted to this Court by the aggrieved party filing a Motion to Enforce the settlement. (*Id.*)

Riverboat has filed the present Motion, arguing that the above-quoted language means that "Schindler agreed to replace the SIM cards with software which would meet and exceed the diagnostic capability of the existing SIM cards." (Def.'s Mem. 2, ECF No. 113). It claims that Schindler breached the settlement agreement by failing to provide software that would meet and exceed the diagnostic capability of the SIM cards. Schindler counters that it never agreed to provide software equivalent to the SIM cards.

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). Settlement agreements are contracts, and therefore, this Court must interpret the Agreement between Schindler and Riverboat pursuant to general principles of contract law. *Hassinger v. JP Morgan Chase & Co.*, 394 F. App'x 63, 65 (5th Cir. Aug. 30, 2010); *Guidry v.*

*Halliburton Geophysical Servs., Inc.*, 976 F.2d 938 (5th Cir. 1992).  The parties agreed that Mississippi law governs the interpretation of the Agreement.

Issues concerning contract interpretation are questions of law.  *Parkerson v. Smith*, 817 So. 2d 529, 532 (¶7) (Miss. 2002); *Massengill v. Guardian Mgmt. Co.*, 19 F.3d 196, 201 (5th Cir. 1994).  The Mississippi Supreme Court has explained, "The primary purpose of all contract construction principles and methods is to determine the intent of the contracting parties." *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 110 (¶6) (Miss. 2005) (quoting *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (¶9) (Miss. 2003).  When interpreting a contract, a court must first look to the four corners of the contract itself and give effect to all of its clauses.  *Facilities, Inc.*, 908 So. 2d at 111(¶10).  The court's concern is "not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *Id*.  Therefore, it would be improper for a court "to infer intent contrary to that emanating from the text at issue." *Id*.  The court can only look beyond the contract's language if it determines that the contract is ambiguous.  *Id*.  If the court cannot determine the parties' intent, the Court will read the contract in a manner that is more favorable to the non-drafting party.  *Id.* at 110 (¶11).  If the Court is still unable to determine the parties' intent, the Court may consider extrinsic or parol evidence, including evidence concerning the parties' contract negotiations.  *Id*.

In the present case, the Court finds that the paragraph of the Agreement concerning the software is ambiguous. The Court cannot determine from the four corners of the Agreement what the parties meant by "greater maintenance access to the equipment." Most of the elevators at issue did not contain SIM cards, but two did contain cards at the time that the Agreement was drafted. The Agreement contemplated that the two remaining cards would be returned to Schindler. As a result, it is unclear whether the parties intended that the software should provide greater maintenance access than that provided in the absence of SIM cards or greater maintenance access than the SIM cards. The parties have not submitted any argument to the Court regarding which party should be considered the drafting party of the Agreement.

Schindler has provided an earlier draft of the Agreement that provided, "Schindler will install new software on all SIM-cards [sic] related elevators at the Isle of Capri Resort in Biloxi, Mississippi on or before June 30, 2011, which software will replicate the diagnostic and trouble-shooting capabilities previously supplied by the SIM-cards . . . ." (Pl.'s Resp., Ex. B, ECF No. 114-1). In correspondence, Schindler requested that the language requiring the software to replicate the capabilities supplied by the SIM cards be omitted and replaced by the following language "provide greater maintenance access to the equipment." (Pl.'s Resp., Ex. C, ECF No. 114-1). This change was incorporated into the Agreement along with other additional changes. Riverboat did not address Schindler's exhibits in its Reply, but it continued to assert that the Agreement requires Schindler to provide

software that replicates and exceeds the capabilities of the SIM cards.

The Court cannot determine the intent of the parties from the argument and evidence submitted. The Court will schedule An evidentiary hearing concerning these issues for July 23, 2012, at 10:00 a.m.

## CONCLUSION

For the foregoing reasons, the Court finds that the Motion to Enforce Settlement Agreement filed by Riverboat should be taken under advisement. The Court grants the Motion for Oral Argument.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion to Enforce Settlement [112] filed by Riverboat Corporation of Mississippi should be **TAKEN UNDER ADVISEMENT**. An evidentiary hearing in this matter will be held on July 23, 2012, at 10:00 a.m.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion for Oral Argument [116] filed by Schindler Elevator Corporation is **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED** this the 11th day of June, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE